■ CATHERINE VALENTINO et al., Individually and as Members of the Town Board of the Town of Ithaca, et al., Appellants, v COUNTY OF TOMPKINS et al., Respondents. [732 NYS2d 468] —Cardona, P. J. Appeal from an order of the Supreme Court (Mulvey, J.), entered August 14, 2001 in Tompkins County, which granted defendants' motion for summary judgment dismissing the complaint.

The Charter Review Committee (hereinafter the Committee) of the Board of Representatives (hereinafter the Board) of defendant County of Tompkins was assigned the task of reviewing potential redistricting plans for the Board based upon the 2000 census. Prior to receipt of the census data, the Committee considered various alternatives to adopting a redistricting plan in time for the November 2001 election, which included weighted voting and changing the terms of office. The Committee decided to move forward with redistricting despite the time

limitations involved. Thereafter, in April 2001, the County received population figures for census blocks, the smallest geographic area for which census information is available, and the figures were used in formulating a plan to establish new legislative district boundaries within the County. County officials discovered, however, that there were obvious errors in certain census block figures, the most noticeable of which was the apparent inclusion of the entire Cornell dormitory population in census block 3,000, where no dormitory was located. To correct the error, the County inquired as to dormitory population figures from a Cornell official, who reported that the dormitories were filled to capacity. Using the numbers received from the university with the 1990 census block figures as a reference, a revised 2000 census block population scenario was developed and mapped by the County which deleted the 5,748 total Cornell dormitory capacity[1] from the census block 3,000 population figure and redistributed the entire amount among the 14 census blocks in which Cornell dormitories were located.

After making the proposed dormitory changes, the Committee took various actions, including conducting a workshop for elected officials from municipalities throughout the County, meeting with the full Board for its input and holding a public informational hearing. The Committee ultimately focused on a plan referred to as scenario 15-D which retained the total number of districts at 15 and retained the number of districts in the City of Ithaca, Tompkins County, at five. Under that scenario, three of the five City districts extended into the Town of Ithaca, Tompkins County, which surrounds the City. The Board adopted scenario 15-D as Local Laws, 2001, No. 3 of the County of Tompkins on May 31, 2001.

Plaintiffs, who include the Town, members of its Town Board and voters from several towns in the County, immediately commenced this action for declaratory and injunctive relief claiming that the redistricting plan violates the County Charter and the Federal and State Constitutions. Following joinder of issue, defendants moved to dismiss the complaint pursuant to CPLR 3211. Supreme Court, by order entered June 15, 2001, granted defendants' motion and dismissed the complaint. On plaintiffs' appeal, this Court, in an order entered June 29, 2001,

---

1. It was later clarified in a July 3, 2001 sworn affidavit from Cornell's housing manager that, on April 1, 2001, the occupancy of the dormitories was 5,647 residents, 101 less than the 5,748 resident capacity. Use of the actual occupancy figures instead of the capacity figures in correcting the error increases the overall population deviation spread in the redistricting plan from 9.80% to 9.91%.

concluded, *inter alia*, that the complaint, on its face, stated several causes of action and, therefore, reversed Supreme Court's order dismissing the complaint (284 AD2d 898).

Defendants, thereafter, moved for summary judgment; Supreme Court, however, directed that the motion be held in abeyance pending the completion of further discovery. On July 31, 2001, the County submitted a formal request to the United States Census Bureau for a correction of the County population distribution pursuant to the Census Bureau's "Count Question Resolution Program" (hereinafter CQRP), a process that apparently takes several months. By order entered August 14, 2001, Supreme Court granted defendants' motion for summary judgment and dismissed the complaint resulting in this appeal.

Initially, plaintiffs contend that Supreme Court erred in dismissing their claims alleging that the redistricting plan violates section 2.09 of the Tompkins County Charter and Code, which requires, *inter alia*, maximum practical consistency with municipal boundaries. According to plaintiffs, scenario 15-D unnecessarily invaded the Town's boundary lines for no other purpose than to preserve the City's ward system[2] while allowing the City to have more representation on the Board than the latest census figures allow. While conceding that it was not possible to have district boundaries contiguous with municipal boundaries throughout the County,[3] plaintiffs argue that alternative plans, particularly those that do not achieve consistency with the City wards, could have been utilized which would have resulted in less crossing of municipal boundaries.

In our view, plaintiffs' claims relating to the crossing of the municipal boundaries were properly dismissed. It is not this Court's function to determine whether a plan can be worked out that is superior to the plan adopted by the Board (*see, Matter of Schneider v Rockefeller*, 31 NY2d 420, 427). Plaintiffs have failed to raise a question of fact as to whether the Board made a good-faith effort to comply with the equal-population principle (*see, id.*) or unduly departed from the County Charter requirement of maximum practical consistency with municipal boundaries. To the contrary, the affidavit of the Committee

**2.** The City is the only municipality other than the County to elect its legislative body from geographic districts; the legislative bodies of the towns and villages in the County are elected on a town-wide or village-wide basis.

**3.** It appears that the Town virtually surrounds the City and abuts on most of the other municipalities in the County. Thus, it appears that the crossing of the Town's boundaries by some district lines is a virtual certainty under any scenario.

Chairperson, together with his deposition testimony, the minutes of the Committee and separate Board meetings, demonstrate that the decisions to continue with 15 districts and maintain the congruity of the district lines and ward lines in the City were reasonable policy choices made within the context of a good-faith effort to comply with the equal-population principle. While the Committee decided early in the process that congruence between legislative district lines and City ward lines was desirable for practical reasons, there is nothing in the record to demonstrate that County officials conspired with City officials to provide the City with more representation on the Board than it was entitled. Under all the circumstances, Supreme Court properly granted summary judgment dismissing plaintiffs' claim based on the Charter provision.[4]

Next, plaintiffs claim that since the redistricting plan is based to a certain extent on estimated population figures using information received from Cornell, the plan violates the rule requiring the use of census figures established in *Seaman v Fedourich* (16 NY2d 94) (*see, e.g., Chonigman v County of Westchester*, 192 AD2d 499; *Honig v Rensselaer County Legislature*, 37 AD2d 658, *affd* 29 NY2d 630; *see also*, General Construction Law § 37-b [1]). Defendants point out that, in contrast to the rigid interpretation of the *Seaman* requirement advanced by plaintiffs, this Court in *Thayer v Garraghan* (29 AD2d 825, *affd* 21 NY2d 881) approved a redistricting plan which basically used the 1960 census figures and, after consultation with the Census Bureau, adjusted the figures for certain of the districts. We noted that the "errors, if any, in assigning population figures to the various * * * districts * * * are *de minimis*" (*id.*, at 826). Regardless of the merits of the parties' respective arguments concerning the accuracy of the method used to correct the Cornell dormitory error, we are of the view that, unless and until the Census Bureau resolves the County's CQRP application, it cannot be determined whether the redistricting plan basically conforms to the census data, a point that cannot be resolved as a matter of law on the submissions presently before this Court. Accordingly, we conclude that plaintiffs' claim based on the Cornell dormitory adjustments is not ripe for summary judgment and, therefore, we remit the matter to Supreme Court to hold that part of the motion directed to that

---

4. Plaintiffs also contend that there is a State policy which limits the crossing of town boundaries in a redistricting plan, but the constitutional provisions cited by plaintiffs apply to the Legislature. In addition, the County's redistricting plan is governed by the County Charter, not by the provisions of the Municipal Home Rule Law cited by plaintiffs (*see, Matter of Angell v Tompkins County Bd. of Representatives*, 90 AD2d 896, 897).

claim in abeyance until the Census Bureau resolves the County's application to correct the error.

Mercure, Crew III, Spain and Mugglin, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion for summary judgment dismissing the claim based upon the Cornell dormitory adjustments; motion denied as to said claim and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

